**FRANK F. TAYLOR CO. v. WISE et al.**
No. 746.

District Court, S. D. Ohio, Western Division.
July 17, 1933.

Toulmin & Toulmin, of Dayton, Ohio, for plaintiff.

Murray & Zugelter, of Cincinnati, Ohio, for defendant Leo Wise.

Owen & Owen, of Toledo, Ohio, for corporate defendants.

NEVIN, District Judge.

This suit is brought for alleged infringement of letters patent duly granted under the statutes of the United States and for alleged unfair competition in aggravation of said acts of alleged infringement, the jurisdiction of this court being invoked under the patent laws of the United States.

Plaintiff is an Ohio corporation, engaged in the manufacture and sale of children's vehicles at Norwood, Hamilton county, Ohio. These vehicles are manufactured under letters patent in suit, namely: No. 1,661,411, Crosley, March 6, 1928; No. 1,656,128, Taylor, January 10, 1928; No. 1,793,848, Gill et al., February 24, 1931; Design No. 76,829, Taylor, November 6, 1928.

The defendants are Leo Wise, residing at Cincinnati, Ohio, where he has an established place of business and where plaintiff claims he has committed infringing acts, and three Ohio corporations, all under one control or ownership. These several companies are the American-National Company, the Gendron Wheel Company, and the Toledo Metal Wheel Company. The bill was filed on or about June 1, 1931.

Plaintiff prays for an injunction and an accounting, and that any property in the possession of defendants, made in accordance with plaintiff's patented inventions and design and unlawfully in the possession of the defendants, be delivered to the plaintiff for destruction, and plaintiff further prays that defendants be required to pay plaintiff such damages as it has sustained by reason of the alleged acts of unfair competition, and that the damages shall be increased threefold and defendants required to pay such increased damages to plaintiff on account of the alleged acts of unfair competition set forth by plaintiff in its bill, and which are to the effect that defendants, jointly and severally, have been and are fraudulently simulating the appearance, color, and design of plaintiff's toy vehicles and baby-walkers, and simulating its advertising matter, and have been and are diverting plaintiff's trade, injuring its business, misleading its customers, and inducing the trade generally to deal largely with the defendants under the belief that by purchasing their simulating devices the trade is obtaining plaintiff's device.

Separate answers were filed—one by Leo Wise, doing business as Leo's Hole in the Wall, the other by the three remaining defendants, the American-National Company, the Gendron Wheel Company, and the Toledo Metal Wheel Company. In his answer, Leo Wise admits he is a citizen and inhabitant of the state of Ohio, but denies that he has committed any acts of infringement or unfair competition, either in the Southern District of Ohio, or any place else. The other three defendants, just referred to, in their answer also each admits that it is a corporation organized and existing under the laws of the state of Ohio, and as such is a citizen and inhabitant of said state, and each denies that it either jointly or severally has committed any of the acts of infringement or unfair competition complained of by plaintiff in its bill of complaint. All four of the defendants allege that the letters patent referred to in the bill of complaint are void and of no effect, because all material and substantial parts thereof had been patented or described in prior letters patent which are referred to with regard to each patent, respectively, in the answers; also because in view of the prior state of the art the structure disclosed involves no invention, but merely the expected skill, selection, and judgment of those skilled in the art, and for other reasons which it will not be necessary to set forth herein, but which can be ascertained by reference to the answers. As indicated, the devices involved in the suit are what might be generally referred to as vehicles for children.

In Patent No. 1,661,411, to Crosley, March 6, 1928, the device is referred to as a "Baby Walker," and it is stated:

"My invention relates to improvements in devices for the care of very young children; and more especially to such devices as that disclosed and claimed in the patent to James I. Carroll, 1,492,202, Apr. 29, 1924, on which

my invention is an improvement. Its object, in common with that of the just mentioned prior invention, is to amuse the infant while assisting it to learn to walk, enabling the infant to use its arms and legs freely and to be unhindered in near approach to objects, at the same time supporting the infant, preventing it from getting off the device or over-turning; and to accomplish this by a very inexpensive device. The especial object of my improvement, over the prior invention, is to provide for travel of the infant freely in any direction, by a forward rolling support which will at the same time insure stability of the device at the front, necessary for small infants as distinguished from vehicles for larger children."

In patent No. 1,656,128, to Taylor, January 10, 1928, the device is referred to as "Toy Vehicle," and it is stated:

"My invention relates to vehicles which are used at various stages of a child's life, first as a baby walker, later as a steering walker, and finally as a coaster wagon. * * * It is my object to make the frame adjustable, including the steering post itself, so that the vehicle can be adjusted in size to take care of the growth of the child, and make the vehicle entirely satisfactory for the same child at various stages of his growth."

In patent No. 1,793,848, to Gill et al., February 24, 1931, the device is referred to as "Child's Vehicle," and it is stated:

"Our invention relates to improvements in children's vehicles and particularly to improvements in baby walker combination- vehicles. It is the object of our invention to provide auxiliary devices for a child's baby walker or play-car by which it can readily be converted into a go-cart or other type of vehicle which may be moved about with a push handle."

The remaining patent in suit, No. 76,829, to Taylor, November 6, 1928, is a design patent for a "Design for a Child's Vehicle." In the patent reference is made to an accompanying drawing, and it is stated:

"In the drawing: The figure is a perspective view of child's vehicle showing my new design. I claim: The ornamental design for a child's vehicle as shown."

By stipulation entered into between the parties and of record in the case, the vehicles of the defendants which are involved in this controversy are as follows:

Gendron Tot Walkers

Models 901, 903, 905, 907, 909, 911, 913, 915, 466.

American Walkabout Baby Bikes

Models 390, 392, 394, 398, 400, 402, 408, 410.

Toledo Baby Bikes

Models 120, 121, 124, 127, 128, 129, 139.

The following are the patent claims relied on and in issue:

Crosley Patent 1,661,411, dated March 6, 1928, issued on an application filed November 20, 1922.

All the claims are relied on as infringed by each of the following models:

American Model No. 400; Gendron Models Nos. 909, 911, 915, and 913; Toledo Model No. 127.

Taylor Patent No. 1,656,128, dated January 10, 1928, issued on an application filed October 25, 1924.

Claim 6 (as restricted by its disclaimer, filed before this suit was brought) is relied on as infringed by each of the following models:

American Models 390, 392, 394, 398, 400, 402, 408, and 410.

Gendron Models 901, 903, 905, 907, 909, 911, 913, and 915.

Toledo Models 120, 121, 124, 127, 128, 129, 139.

Gill et al. Patent 1,793,848, dated February 24, 1931, issued on an application filed February 3, 1927.

All claims are relied on as infringed by each of the following models:

American Models 392, 402, 410, and 408.

Gendron Models 903, 907, 909, 913, and 915.

Toledo Models 121, 128, 139, and 129.

Design Patent 76,829 to Taylor, dated November 6, 1928, issued on an application filed July 18, 1927.

Infringement claimed as to all of the models of all of said defendant companies.

The record shows that about 1916, American-National Company first put out vehicles of the baby-walker or straddle-board type, being known as "Skippy" vehicle, enabling children to propel themselves with their feet on the floor and teaching them how to steer. It comprises a seatboard of the straddle type supported at the rear by lateral spaced wheels and at the front by a single wheel mounted for horizontal turning to permit steering and having a steering post rising therefrom above the seatboard and provided at its top with a handle or wheel to be grasped by the user.

In 1923, in order to make a vehicle suit-

able for children too young to walk, the American-National Company produced its No. 390 baby-walker. It has a seatback and retaining ring for the baby mounted on the seatboard. The direction of movement is controlled by the inclination of the body from one side to the other. This device is substantially the same as that of the Carroll Patent No. 1,492,202, except that No. 390 substitutes spaced front wheels which are swiveled for the nonswiveled spaced wheels of Carroll. The Carroll Patent, No. 1,492,202, was before the Court of Appeals of this (Sixth) Circuit, in the case of Taylor Co. v. Adrian, 12 F.(2d) 592 (at the same time also the court considered the case of this plaintiff against Wonder Manufacturing Company). In the Adrian and Wonder Cases, the court says [page 593 of 12 F.(2d)]:

"The defenses to the suits were lack of patentability and noninfringement. The lower court was inclined to the view that both were sustained, but based its decree on the ground of noninfringement."

The judgment of the District Court was affirmed. In 1924, three new models of baby-walkers were developed by the American-National Company. These were models Nos. 391, 392, and 394. These models are substantially the same as No. 390, except for the form of the baby-retaining means. In 1926, a baby-walker with a closed-in steel back was added to defendants' line. This baby-walker also included the convertible feature, which enabled it to be used first as a baby-walker by children too young to walk and then as a kiddie-car by children after they had begun to walk. In 1927, the steel-back rest was perforated, the purpose being to make it airy. In 1927, a folding leatherette footrest was developed. It was detachably supported at its front end by the front running gear frame, and was attached at its rear end to the inside of the seat-board. It became necessary to make some provision for supporting the child's feet when the vehicle was being used as a push-cart or pull-cart, and a footrest was developed as was also the provision of the closed-in back, whether of fiber or steel, to prevent the baby from slipping from the seatboard or retaining ring. In 1929, defendants changed to a steel footrest with a corrugated rubber mat on top. This was detachably supported at its front end by the front gear frame and the rear axle. In 1931, a certain form of footrest was used until defendant companies were notified of the issuance of the Gill patent in suit, dated February 24, 1931, when change was made to a longer form

of footrest. Defendants were licensed under the White Patent No. 1,220,038, as to vehicles "where the straddle-board is the performing medium of holding the front gear and rear gear." Defendants' devices are known in the trade as "Walk-A-Bout," "Tot Walker" and "Baby Bike." The defendants have a distinctive design for their respective devices, and each bears the name of the defendant company putting out the respective vehicle.

The earliest date of production and use of the baby-walkers of the straddle-board type of the plaintiff company is December, 1925.

Plaintiff's 1926 catalogue shows a "Taylor Tot" with a "formed" open-sided sheet metal back and with a sheet metal footrest detachably supported in front and back by respective front and back running gear frames. Plaintiff's 1927 catalogue shows a similar vehicle to that of the 1926 catalogue, except that the "formed" back is placed further back on the seat and the sides are more extended. The back is also shown with the perforations, as in plaintiff's design patent in suit. Plaintiff's catalogues for 1928, 1929, 1930, and 1931 show similar designs to those of the previous catalogues. The device of plaintiff is known to the trade as "Taylor-Tots."

As to unfair competition: This question is to be considered only in aggravation of the question of infringement. If the bill is dismissed either for invalidity of the patents or for noninfringement, this court does not have any jurisdiction upon the question of unfair competition, in view of the fact that all of the parties are residents of the same state (Ohio). Schiebel Toy Co. v. Clark (C. C. A.) 217 F. 760, 774.

In view of the conclusions at which this court has arrived, it is unnecessary therefore to discuss further the issues raised and the facts as set forth in the record with respect to the alleged acts of unfair competition on the part of the defendants. Upon a careful study of the entire record in the case, together with the briefs and arguments of counsel, the court has arrived at the following:

Findings of Fact and Conclusions of Law.

Re—Crosley Patent 1,661,411.

Findings of Fact.

1. Crosley Patent 1,661,411 and its claims are directed and restricted to a vehicle convertible into a "Baby Walker," with laterally spaced front caster wheels and without any hand-controlled steering feature intend-

ed for use by children too young to walk, or it is convertible into a "Kiddie Car" having a single front steering wheel with hand-control and for use by children old enough to walk. There is no co-operative action between the two features. Neither feature in any way contributes to the operation or action of the other. The vehicle, when adapted for use as one, cannot be used as the other.

2. Prior art patent to Carroll, 1,492,202, shows all of the features of the Crosley patent in suit, except the swiveled front wheel.

3. Each of the prior art patents to Morton, 545,712, and to Weddell, 606,494, discloses a convertible children's vehicle, but no claim is made to the convertible feature.

4. It was not new with Crosley to change or adapt a "Kiddie Car" type of vehicle for use by children too young to walk. This was done by Carroll, as expressly stated in his patent 1,492,202. Likewise, there was nothing new with Crosley in providing a vehicle like Carroll with a single front steering wheel and control handle. This had been done by White, Haugen, Smith, and various others, as shown particularly by patents 1,220,038, 1,-290,987, and ·1,321,564.

5. The laterally spaced swiveled front wheels were not new with Crosley.

### Conclusions of Law.

1. Each of the claims of the Crosley patent is directed to the convertible feature of the vehicle, and is, therefore, invalid as being for an aggregation of elements.

2. Each of the claims of Crosley is invalid as claiming two distinct separately usable vehicles, one a "Baby Walker" and the other a "Kiddie Car."

3. Each of the claims of Crosley is invalid for want of invention over Carroll, 1,492,202, particularly when considered in connection with any of the patents to White, 1,220,038, Haugen, 1,290,987, and Smith, 1,321,564.

4. Each of the claims of Crosley, apart from the convertible feature, is invalid on the ground of aggregation for the reasons stated by Judge Hickenlooper in his decision in the Taylor v. Wonder Mfg. Company suit on the Carroll patent.

### Re—Taylor Patent 1,656,128.

### Findings of Fact.

1. Claim 6 of this patent is the only one involved in this suit.

2. Claim 6 was changed by disclaimer to include as new element, post 15, with cross-bar 16; also restricted to a toy vehicle in which the seat-board "does not extend along the outside of the child's legs." .

3. There is no co-operative action between the formed seat-back and its retaining ring as one element and the front post 15 and its cross-bar as another element. In use, the child grasps either the retaining ring or cross-bar but not both at the same time. The claim is directed particularly to a "formed back" as distinguished from the smaller back portion of the Crosley patent in suit, and this specific feature has no relationship whatever to the front cross-bar. Vehicle made under Crosley patent, 1,661,411, did not have a front cross-bar.

4. The seat-back member 12 in Crosley patent is a little wider than seat-back member 22 in Carroll, 1,492,202, and the seat-back of the Taylor patent, 1,656,128, is wider than that of Crosley. The width of the back member is a matter of comfort for the baby and the degree of comfort is in proportion to the width of the seat-back member.

5. Only difference in Taylor patent, 1,-656,128, over Crosley, 1,661,411, is that "in Crosley there is no laterally extended handle."

6. There is no support in the Taylor patent, for the statement in the disclaimer to claim 6 that the purpose of the post 15 and its cross-handle 16 is "to distribute the weight of the body," nor that the seat-board "does not extend along the outside of the child's legs."

### Conclusions of Law.

1. Claim 6 of Taylor patent, 1,656,128, in its disclaimed form, is invalid for the reason that the disclaimer added a new element to the claim, namely, the post 15 with its cross-bar, which is improper under the disclaimer statute (35 USCA § 65).

2. Claim 6 of Taylor, 1,656,128, is invalid for the reason that the subject-matter entered therein by the disclaimer is not supported by the specification of the patent.

3. Claim 6 of Taylor, 1,656,128, is invalid on the ground of aggregation for the reasons stated by Judge Hickenlooper in his decision in the Taylor Co. v. Wonder Mfg. Company suit on the Carroll patent.

4. Claim 6 of Taylor, 1,656,128, is invalid for want of invention over Carroll, 1,492,-202, or Crosley, 1,661,411. No invention is involved in broadening the upright back, member of either Crosley or Carroll, and extending it a distance around the side of the

seat, if desired, to prevent the baby from falling out between the seat and retaining ring, particularly in view of the formed sheet metal back of the Haugen patent, 1,290,987, and the formed backs of Smith, 1,321,564, and Schroeder, 1,384,160.

5. Due to the modifying of claim 6 by disclaimer, it is not entitled to the presumption of validity which a claim usually carries by reason of its grant by the patent office. In such case, the burden rests on plaintiff from the outset to satisfy the court by a fair preponderance of evidence that such a claim is valid. Fruehauf Trailer Co. v. Highway Trailer Co. (D. C.) 54 F.(2d) 691, 694.

Re—Gill, Orr & Taylor Patent 1,793,848.

### Findings of Fact.

1. All claims alleged to be infringed.

2. Claims 1, 2, and 3 of Gill are limited to the footboard being provided with "means for engaging the rear rolling support." This feature is not included in any vehicle shown to have been sold by defendants since February 24, 1931, the date of issuance.

3. Claim 4 of Gill is limited to the front and rear rolling supports, each having "horizontal portions" and to the seat-board as "provided with means for forming a sliding engagement with said horizontal portions." No vehicle including this feature has been shown as having been manufactured or sold by any of defendants since February 24, 1931.

4. Claim 5 of Gill calls for both an auxiliary handle and a footboard, together with "means for connecting said foot-board to said auxiliary handle when said board and handle are in detached position." No vehicle including this feature has been shown as manufactured or sold at any time by defendants.

5. Claim 6 of Gill is not complete, as it does not locate the footboard with respect to either the running gear or the straddle-board, and does not include any support for the footboard. So far as the claim is concerned, there is no relationship or co-operative action between the straddle-board and the footboard.

6. The vehicle of the Gill patent is a development and so-called "improvement" over the vehicles of the Carroll, Crosley, and Taylor patents, 1,492,202, 1,661,411, and 1,656,128, previously manufactured and sold by plaintiff, and the only change or addition over particularly the vehicle of the Taylor patent is the provision of a footboard. The Mor-

ton patent, 545,712, shows a straddle-board type of "Baby Walker" having the same style of detachable footboard as the Gill patent in suit. The Morton footboard has "a horizontal portion and an angularly disposed portion, said angularly disposed portion being directed rearwardly and upwardly to form a heel-plate means," the same as shown in Gill and specifically called for by claim 6.

7. Each of claims 7 and 8 of Gill calls for the footboard as being "detachably mounted fore-and-aft on the respective running gears." This feature is not present in any of defendants' vehicles shown to have been manufactured and sold since February 24, 1931, the date of issuance of said patent.

8. Each of claims 9 and 10 of Gill calls for front and rear rolling supports and front and rear frame members supported by said rolling supports, and also calls for "means for supporting the forward and rearward portions of said foot-board directly from the frame members," meaning the rear frame member as well as the front. This feature is not present in the alleged infringing structures.

9. Claim 11 of Gill includes only an attachment for the forward end of the footboard. This claim calls for nothing more than the vehicle construction and arrangement of parts of the Taylor patent, 1,656,128, combined with the detachable footboard of the Morton patent, 545,712.

10. Claim 6 of Gill was presented in amendment D, paper 16, of the file proceedings of this patent, as claim 16, together with a claim numbered 15, which latter was exactly the same as present claim 6, except that it did not include the statement in the last three lines of the claim—"being directed rearwardly and upwardly to form a heel-plate means," and was rejected and canceled on references. The said feature of difference between these two claims is present in Morton, 545,712.

11. Claim 11 of Gill was originally presented as claim 32, except that it did not include the "whereby" clause at the end of the claim reading "whereby the footboard will so support the feet of the child that they cannot touch the floor or be inserted between the footboard and the rest of the vehicle to thereby protect a child's legs and feet from injury." The claim as so presented was rejected, and, after being amended to include the "whereby" clause, allowed.

12. The Morton patent, 545,712, discloses a child's vehicle of the straddle-board type

having front and rear running gear members and including the structure of the "whereby" clause of claim 11, of Gill, namely, a footboard which will "so support the feet of the child that they cannot touch the floor or be inserted between the footboard and the rest of the vehicle to thereby protect a child's legs and feet from injury."

13. The Zock patent, 135,401, discloses a child's vehicle having front and rear running gears, a "straddle-board" 24, and a footboard 20 mounted on the running gears.

14. The Siebert patent, 1,337,618, has a "straddle-board" 10a supported by front and rear running gears the same as the Gill patent in suit, and the footboard supporting member 25 is equivalent to the footboard member of the Gill patent, is detachably supported at its forward end by the front running gear, the same as in the Gill patent, and is attached at its rear end to the straddle-board, supported in this respect the same as defendants' footboard in Plaintiff's Exhibits 15, 16, and 17.

### Conclusions of Law.

1. Each of the claims 1, 2, 3, 4, 5, 7, 8, 9, and 10 of Gill patent, 1,793,848, includes elements not present in defendants' vehicles, and is, therefore, not infringed.

2. Claim 6 of Gill is indefinite, incomplete, and vague, and, therefore, invalid as not complying with the requirements of section 4888 of the Revised Statutes (35 USCA § 33). No support for the footboard is contained in this claim and there is no relationship shown between the running gear, the straddle-board, and the footboard.

3. Claim 6 of Gill is invalid on the ground of aggregation for the reasons stated by Judge Hickenlooper in his decision in the Taylor Co. v. Wonder Mfg. Company suit on the Carroll patent.

4. Claim 6 of Gill is invalid for want of invention over the prior art as exemplified in either Morton, 545,712, Millen, 1,557,263, Siebert, 1,737,618, or Zock, 1,350,401.

5. Claim 6 of Gill is anticipated by the patent to Morton, 545,712, and, therefore, invalid.

6. Claim 11 of Gill is vague, indefinite, and inaccurate, as it does not include an operable footboard attaching means, and is, therefore, invalid as not complying with the requirements of section 4888 of the Revised Statutes.

7. Claim 11 of Gill is invalid for want of invention over either Morton, 545,712, Siebert 1,737,618, Zock, 1,350,401, Millen, 1,557,-263, or Rundell, 1,167,524.

8. Claim 11 is invalid as being anticipated by each of the patents to Morton, 545,712, and Siebert, 1,737,618.

9. The "whereby" clause added to claim 11 of Gill (former claim 32) by amendment to avoid rejection on Morton, 545,712, does not patentably differentiate it from such patent as it contains all of the features defined by said clause.

10. The addition of a "whereby" clause to a claim calling for an otherwise old structure does not render the claim patentably novel. Electro-Dynamic Co. v. Westinghouse Electric & Mfg. Co. (C. C.) 191 F. 506, 508.

### Re—Taylor Design Patent 76,829.

#### Findings of Fact.

1. Whatever novelty this patent may contain is limited by the file proceedings to the particular imitation cane design in combination with the hexagonal shape of back and retaining ring. In order to overcome the first office rejection and references cited therein, applicant admitted that the general type of vehicle shown was old and then stated: "The particular features of applicant's new design are the imitation cane-back and the hexagonal shape of the back and retaining ring. * * * Applicant, however, is not claiming the imitation cane-design, but he is claiming this design in combination with the unusual shape of the back and retaining ring."

2. None of defendants' vehicles is shown to include either the particular form of imitation cane design or the "unusual" hexagonal shape of the back and retaining ring of the Taylor patent design.

#### Conclusions of Law.

1. This patent is not infringed by defendant. The file proceedings restrict this patent to the particular form of perforation and hexagonal shape of the seat-back and retaining member, neither of which features is present in defendants' vehicle.

### Re—Unfair Competition.

#### Conclusions of Law.

Inasmuch as the bill of complaint must be dismissed because of the invalidity or noninfringement of the respective patents or claims thereof, as herein above set forth as to each patent and the claims thereof, respectively, this court does not have "jurisdiction

to pass upon the question of unfair competition" in view of the lack of diversity of citizenship. Schiebel, etc., Co. v. Clark, 217 F. 760, 774 (C. C. A. 6).

An order may be drawn dismissing the bill of complaint at plaintiff's costs.